May it please the court. My name is David Womack. I represent Mr. Riebe and Mr. Hall. Together with Mr. Scott, who separately represents Mr. David Iray, we will be presenting appellant's arguments on appeal. Are you going to – so you're going to split your time with him? Correct, Your Honor. I will be taking the first eight minutes to present Mr. Riebe and Mr. Hall's arguments on appeal. Mr. Scott will then take the next eight minutes to present Mr. Iray's arguments on appeal, and we respectfully request four minutes be reserved for rebuttal. Okay. I assume there's no relation? No, Your Honor. Yes. With permission of the court, I will forgo a recitation of the facts and proceed directly to the issues on appeal. Go ahead. Your Honors, this Court should reverse the decision of the lower court and find that both Mr. Riebe and Mr. Hall are entitled to the protections afforded by absolute immunity for the following two reasons. First, all of Mr. Riebe's conduct associated with the issuance of the search warrants, those January 1999 search warrants, was intimately associated with his role as an advocate for the State. Second, all of the activities concerning Mr. Hall and Mr. Riebe occurred after Mr. Womack was indicted, therefore, after the Finally, both Mr. Riebe and Mr. Hall should be afforded qualified immunity, because in Mr. Riebe's case, he did nothing more than the superior court judge who reviewed those affidavits and found that they supported or had probable cause to support the warrants. And as for Mr. Hall, he was a line officer, just as this Court recently recognized in Ramirez v. Bowe, who should be afforded qualified immunity. I'll begin with Mr. Riebe. Now, Mr. Riebe is the district attorney? Correct, Your Honor. And are you aware that the search has been granted on our case of Bishop Paiute Tribe? I have, Your Honor. Okay. So how does that affect your argument today? I don't believe it does affect the argument, Your Honor, and let me explain why. In Bishop Paiute Tribe v. County of Inyo, this Court found that the district attorney was not entitled to absolute immunity, because those actions took place before an indictment or before the initiation of the judicial proceedings. In fact, this Court recognized four distinct points where the judicial proceedings begin, first and foremost being the indictment. In this case, Mr. Womack had been indicted in December 1998, and these searches did not take place until January 1999. Therefore, it is sufficiently distinct from the Bishop Paiute Tribe case, Your Honor. But isn't it possible that the Supreme Court's – I guess what I'm asking is now that the Supreme Court's granted cert on that, that distinction may not even be – well, I mean, I would imagine that the Supreme Court having granted cert is a signal that I'm just wondering – I mean, we can't speculate. So in light of that – Certainly, Your Honor. Possibly the Supreme Court could make a finding which would encompass all of the district attorney's actions under the umbrella of absolute prosecutorial immunity. But as I understand it, this Court only found that he was not entitled to prosecutorial immunity because those actions related to the search of the So sticking with the law as we know it today, all right, how – how broad is the umbrella of absolute immunity in terms of the acts that the deputy – the special – I guess he was special deputy, you know, special deputy DA engaged in? Well, Your Honor, Mr. Reavy is the district attorney of Amador County. Mr. Iray was the special deputy district attorney. He represented Mr. Iray. Correct. Go ahead. As the district attorney, the absolute immunity would certainly cover Mr. Reavy's review of the search warrants because as the United States Supreme Court held in Burns v. Reed, the issuance of a search warrant is unquestionably within the prosecutor's role as an advocate for the State. In Mr. – this case, the extent of Mr. Reavy's involvement is his review of those search warrants on his first day in office in a factually complex and an ongoing prosecution. Certainly his review of those affidavits and search warrants would be encompassed within absolute prosecutorial immunity. In Burns v. Reed, that case, the district attorney had taken the statements of a police officer, adopted those, and then proceeded to present those to the court. And the United States Supreme Court found that those activities, his review of the affidavits and his presentation of those facts to the court were within his role as an advocate of the State. Surely Mr. Reavy's mere review of those affidavits would also be included within the absolute prosecutorial immunity. Which brings me to my second point. All of these actions took place after the indictment against Robert Womack. He was indicted in December 1998, and these searches took place in January 1999. Mr. Reavy was not even the district attorney until January 4, 1999. That was the date he was sworn in. That was the same date that he reviewed the affidavits prior to them being presented to the superior court judge. Well, the mere fact that they happened after a certain date is not controlling. It depends on what he did, right? In other words, he could have been investigating a different crime. In fact, there is some indication in the record that there was suspicion of other crimes, right? Not the crime under indictment. In that case, it would be investigative, wouldn't it? Well, respectfully, Your Honor, I would disagree with your assessment that these were unrelated or somehow collateral to the indictment. In fact, the affidavit of Russell Moore states explicitly that the affidavit or the search warrants were necessary in order to gather evidence for which Robert Womack was already indicted. In fact, that is stated on page 1 of Moore's affidavit, located on page A02142 of Appellant's Record on Appeal. Further, it states that he understood that there was substantial information related to the 97 and 98 crimes that the grand jury indicted Robert Womack on. However, to complete this puzzle, he needed more information. That information included some phone records, bank records, property records, and other credit account information associated with the so-called XX account. And Russell Moore stated that when viewing these documents in total, and I quote, these could be evidence of other crimes, but most importantly, will be further evidence in support of the indictment for which Robert Womack has already been indicted. Well, had perjury been brought up yet in the indictment? It was, Your Honor. Robert ---- So that was part of the investigation? Correct, Your Honor. Robert Womack was indicted on 21 separate counts, including transportation of hazardous waste, various other environmental crimes, perjury, witness tampering, and tax fraud. It was a very broad indictment. The search was very broad, but it was done expressly to gather evidence into support of that indictment. So therefore, his actions were related to the prosecution of Robert Womack, and therefore, should be entitled to absolute immunity. I see my time is up, Your Honor. I would like to give my co-counsel some time to argue his points on Mr. Womack. Okay. Thank you, Mr. Womack. May it please the Court, my name is Steve Scott. I represent Defendant David Irey in this action. I would like to join in Mr. Womack's comments and statements about the case. I'd like to start out by pointing out that Mr. Irey was initially sued in both his official capacity and his individual capacity. In reviewing the appellee's brief, it appears that they are no longer pursuing a theory of liability against Mr. Irey in the official capacity doctrine. So I'll move on to the personal exposure, personal liability aspect of this case. And like Mr. Womack, we believe that Mr. Irey is entitled to absolute immunity in this particular case. The conduct complained of by the plaintiffs appellees in this case all occurred subsequent to or after the indictment that had already been discussed. As was stated, there was a 21-count indictment that came down against Mr. Womack, and the search warrant affidavit was in support of that indictment. It clearly set forth the reasons it was necessary to delve into certain areas and related it to the indictment. That's not only my opinion, but also in Judge Levy's order on page 19, he said in relating the search warrant affidavit, he indicated, instead most of Moore's affidavit focuses on the likelihood of criminal activity by Robert Womack in removing the underground storage tank, UST, and dissuading witnesses from testifying before the special grand jury. So it's our position that if, in fact, the search warrant affidavit is related to or connected with the prosecution, absolute immunity applies at that point. The question might arise then, well, when or if the absolute immunity can be terminated or lost, and it's our position that as long as the particular conduct complained of. In this case, the conduct complained about regarding Mr. Irie is that he in some way participated in the preparation of the search warrant affidavit and participated in the search warrant execution. Well, now, did he participate in the search warrant affidavit with respect to the January 26, 99 search warrant, or was that just with respect to the January 13th? With respect to the January 13th Ridge Road, we did not. There's no evidence. And, in fact, Judge Levy said that we cannot be held for any execution or participation in the execution of the warrant on the Ridge Road address. As far as the Bossie Ranch search is concerned, the judge basically said it was premature at this time that it was necessary to conduct further discovery, specifically to take the deposition of Defendant Moore, the CHP investigator, to determine or to attempt to determine what role affinity Mr. Irie played in that particular search. I think, and I would concede that I think it's premature for this Court to rule on the Bossie Ranch search itself. In its entirety, because as I understand it, there's two claims with respect to the Bossie Ranch. There's the overbroad execution of the search warrant against your client, and then there's the alleged judicial deception. That's the one that's premature. Judicial deception is, yes, Your Honor, that's correct. The alleged overbroad execution of the search warrant against your client, that's where he denied both absolute and qualified immunity. No, on the execution of the actual execution. He hasn't ruled on that because there hasn't been any testimony. There wasn't any testimony at the time the summary judgment was submitted as to what role affinity Mr. Irie played in the actual search itself. So neither one of these has been adjudicated? That's correct. I think that he basically reserved, said they were not ripe at that time and was necessary to have some additional discovery conducted. Did he appeal properly before us on those claims? Well, as far as my understanding as to Bossie Ranch was it was, the theory was judicial deception and execution. I didn't pick up on the overbreadth of that particular search warrant. No, overbroad execution. Okay, overbroad execution. Right. Those are the two issues that Judge Levy deferred on and said we need further discovery on. Those two means the overbroad and what else? And the overbroad execution and the judicial deception as far as submitting statements attributed to various witnesses in this case. So you can go back to Judge Ishii and still see qualified immunity on those claims? Correct. Once the facts are? Correct. Yes, the evidence has been developed at this point, and we do plan on proceeding back in front of Judge Levy on those particular issues, which he has left open at this point. But in any event, I think the key in this case is to look at the search warrant affidavit and to make a decision, is it connected with or related to the indictment? Clearly it is. That's not only my opinion, that's Judge Levy's opinion in this particular case. At that period of time, there's no question that he was aggressively prosecuting this particular case against Robert Womack. The appellees made some note of the fact that we were seeking KRL records, but I think that's a red herring argument at this stage because, in fact, KRL is the alter ego of Robert Womack, and so we can clearly, I think, get records safely related to KRL. So I don't think that's a legitimate argument at this point. How far back do you think you could search for records of KRL? Well, in this case. Some of them went back to the 1990s. Some of them did go back to 1990, and there was a real question of the relationship between KRL and Robert Womack and where the money was coming from and where the money for these cars that were being purchased in Oregon and brought back into California. There was real issues as to who was who and how did Robert Womack fit in with KRL and where was the money coming from to buy these cars and also to pay for various expenses related to the underground storage tank. So it did go back to 1990, which I know Judge Levy criticized, but it's our position that if, in fact, this search warrant affidavit is related to the indictment or connected with the indictment, that you're not going to lose your immunity, even if it, let's say, goes back to 1990, that that's not a basis for the loss of your immunity, similar to a number of the cases that have been cited in the briefs, which indicate that subsequent to an indictment, for example, when perjured testimony was submitted, that that does not cause you to lose your immunity under those circumstances. And I would analogize to those cases and make the same argument, that even if you felt that perhaps it was somewhat overbought, it would not alleviate or eliminate the absolute prosecutorial immunity provided to Mr. Irie because he's aggressively prosecuting this case at that time. We're down to four minutes, Your Honors, and we would submit that time for rebuttal. That's fine. Thank you. Thank you. Good morning. My name is Steve Moyer. I'm arguing on behalf of KRL and the KRL partners. If I could begin by answering Judge Teshima's question regarding the breadth of absolute immunity, based on at least our understanding of today's law, and assuming cert was granted on Bishop, I would point out that I do not believe that Bishop stands for a new proposition whatsoever. It is merely a case which follows Burns and Campbell v. Packman and Buckley v. Fitzsimmons. With respect to counsel's argument relating to Burns v. Reed as standing for the proposition that a district attorney is entitled to absolute immunity in the preparation of search warrants, that case does not stand for that proposition. It stands exactly for the opposite position. Burns v. Reed held that a district attorney received absolute immunity when engaged in a probable cause hearing before a court, and that engaging in a probable cause hearing before a court was intimately involved in the judicial process. However, the court specifically held that a district attorney giving advice to police was an investigatory action, was a, I don't know why I can't say that, was functioning as an investigator or a detective, and following the Buckley and Imbler functionality test, if a district attorney is providing advice to the police, absolute immunity is not available, and the only immunity, if any, which is afforded to such district attorney would be qualified immunity. In this case here, the DA himself, apparently all he did, he didn't give advice to the police. All he did was review the search warrant preliminary to its submission to the court. That's not all he did. Right? No. What else did he do? He read it. What's reviewing it? He read it. He made changes, and he made suggestions as to how to prepare the warrant. Right. Now, none of that was, you know, advising the police. It's preparatory to submitting the affidavit to the court, right? That's advice. No. It's part of this. Like, if you prepare a complaint, it's to file it in court. That's what he was doing. He was preparing his probable cause materials for submission to the court so he could get a warrant, right? Yes. Well, isn't that part of his function as the prosecutor? No. It's intimately connected with the process of issuing the warrant. That's prior. You're saying that kind of activity is, like, investigative? If it occurs, as it did in this case with respect to KRL, who opposing counsel insists on characterizing as the alter ego of Robert Womack without any evidence to support that assertion, if the district attorney or prosecutor, like the district attorney or prosecutors in Burns and Buckley, is consulted by the police to assist them in the preparation of a search warrant, pre-indictment, which is, this is all pre-indictment to KRL. Here he wasn't asked by the police to assist them, and he was not assisting the police. He means the D.A. himself. Sure he was. Did they call him and say, you know, did you want your advice? The way the search warrant got to Mr. Riebe was that Mr. Hall and Moore, who are both police officers, Mr. Hall is an investigator for the district attorney's office. It's not so important as to how it got there. What's important is where it went after he looked at it. In other words, you know, he didn't say, well, look, you guys, this is all wrong. You've got to do it over again. I'm going to send it back to the police department. Right? No, it didn't go directly to the judge. It went back to the Mr. Moore, who changed it. And according to the suggestions made by Mr. Riebe, who didn't just review it for ten minutes. He reviewed it according to the evidence for hours, all day. Well, wasn't it significant to the indictment of Mr. Womack that he was the alter ego of KRL? Wasn't that significant in terms of what happened to the underground storage tank? Which? I'm sorry? The search that they did, wasn't it significant? There seems to be some dispute as to whether or not Mr. Womack was the alter ego of KRL. And there was an indictment of Mr. Womack. So wasn't that question significant in terms of the fact that the underground storage tank was found, having its removal having been paid for by Mr. Womack? The evidence that is alluded to that Mr. Womack is the, I'm sorry, that KRL is the alter ego of KRL, is that on one occasion they have one check that was signed by Robert Womack, paid for the destruction. Right, but I'm saying the indictment had issued against Mr. Womack, right? And you're saying, yeah, but that doesn't mean an indictment. It was pre-indictment as to KRL. It was pre-indictment as to KRL. But there was an indictment as to Mr. Womack. Yes. So if they're the alter ego and the same entity, then isn't that a significant thing to investigate and find out? If, oh, I, okay. Your question is, would it be a significant issue to investigate whether or not KRL and Robert Womack are the alter ego? Mr. Womack for the unlawful removal of the UST. Yeah, that would be a significant issue to investigate. However, in this case, the standard of review is whether or not there is evidence to support the trial court's ruling that that wasn't what they were doing. And the trial court has found that they were investigating not Mr. Womack and not whether Mr. Womack was the alter ego, but they were investigating other things. And, in fact, the proof of the pudding is in the Bossie Ranch, which the testimony clearly establishes, contrary to argument, on page A01545, page 24 of the deposition of Todd A. Reby, Mr. Reby testified at lines A through 10. And then there was the Bossie Ranch search warrant, which is a stand-alone investigation. It is not related to the Womack case. Well, I understand from what appellants said that the Bossie Ranch search isn't actually in front of us because the ruling on that was deferred. No, that's not true. Okay. Did you hear them say that? Yes, I heard them say that. All right. So tell me how it's not true. Bossie Ranch involves the information that was gleaned from Mr. Momquist, who was the gentleman that was residing on Bossie Ranch, who bore a grudge against the Robert Womack and the Womack, which fact was not disclosed to the magistrate. That is included in both of the January search warrants. Both of the January search warrants are replete with information taken from them. Well, no, that's not the question. The question is whether the district court ruled on it. Right? Whether the district court ruled on it. In other words, the appellant's position is, well, the district court reserved ruling on the issues related to the Bossie Ranch. They reserved ruling on, as I understand it, we have two different appellants here. They reserved the district court reserved ruling on Mr. Irie's participation in Bossie Ranch because Mr. Moore's deposition at that time had not been taken. And now it never will. Yes, it was taken. It was taken. Then he killed himself. Right. Okay. I thought he had killed himself before he took. Preserved. Okay. But, okay. So you're saying as to Irie, it is deferred, but as to? Reby and Hall, it's not. And did they actually participate in the search? They, Reby and Hall, were not on site. But they participated in the planning and preparation of Bossie Ranch and in the preparation of the search warrant for Bossie Ranch. And your claim against them is an overbroad execution of the search warrant? An overly broad search warrant on its face. Oh, the defective. Your claim is a defective search warrant. I'm looking at Judge Levy's order now. This is the order of what date is it, January 17th, all right? Right. And page 23, he says, with respect to the the overbroad execution search warrant at the Bossie Ranch. Right. First of all, plans concede Hall and Reby were not involved in the execution of the Bossie Ranch warrant. That's correct. They weren't there. And then and then with respect to the judicial deception claim. Right. He says it's, you know, he can't rule on it. That's right. So you agree he didn't rule on the judicial deception. Yes. Now, what about the the the overbroad execution claim? On Reby and Hall? On everybody. Well, I asked you, Mr. Why everybody? I mean, the three. Well, he says the degree of Irie's involvement in Bossie Ranch search remains unsettled. So apparently on that basis, he's not ruling on Irie, right? Correct. Okay. So you agree he didn't rule with respect to Irie on the overbroad, overbroad execution. Right. My understanding is that's been deferred. So I mean, that issue is still before the district court. Yes. Okay. Now, with respect to Hall and Reby, did the district court make a ruling on the overbroad execution claim? I don't think so. No. All right. So that's not before us either. You conceded that they weren't there. And then he doesn't elaborate. All he says is they weren't there. Right. Yeah. So that's not before us either. I don't believe since we're talking about what's not before us. Let me ask you one more question. Are you making a claim against. I think it's Irie on the in his official capacity or not. It's official. Yes. No. Okay. Go ahead. I just want to clear the decks of, you know, I think if I was paying this matter, that's all. If I was making that claim, we wouldn't be here. Well, I say to you, what I say to my wife is don't interrupt me while I'm interrupting you. I can't remember where I was. Do you have any questions? Oh, sorry. I just like briefly to respond to the argument made by opposing counsel that. The breadth of the search warrant went back perhaps to ninety or ninety one. And there was a really good reason for that, because they were looking for registration on a motor vehicle, which had nothing to do, by the way, with the removal of a tank or with whether or not KRL was the alter ego of Robert Womack. And in fact, the evidence discloses that they went back as far as the 70s and seized Robert Womack's mother's will. I'll submit it. Okay. Thank you very much. Your Honors, if I can briefly make a few points on rebuttal. The United States Supreme Court case of Burns v. Reed speaks for itself. The court quotes the issuance of a search warrant is unquestionably a judicial act. That's what Todd Reby did in this case. Your Honor correctly pointed out that Mr. Reby reviewed the search warrant. Same thing that the Supreme that the superior court judge did. He did make a recommendation that the search warrant might be narrowed into time, but he never saw it after that. As far as he knows, it was taken directly to the court. If there were other changes, Mr. Reby wasn't aware of that. The record is clear on that. Mr. Reby's sole involvement was on his first day in office to review the warrants before they were presented to the superior court judge. Now, you represent Mr. Hall, too. Correct, Your Honor. Now, what was his relationship to that, the search warrant? Mr. Hall did not draft the search warrant. Mr. Hall did not draft the affidavits. Mr. Hall is a district attorney's investigator who is doing some investigations to further the indictment against Mr. Womack at the direction of the district attorney. As this Court has found in Freeman v. Hill, a district attorney investigator who is acting at the direction of the district attorney in the furtherance of a prosecution is also entitled to absolute immunity. The issues before this Court are the January 1999 searches. Those searches and those affidavits and those warrants were done after Robert Womack was indicted. Clearly, all the conduct of Mr. Hall and Mr. Reby falls within the prosecutor's role as an advocate for the State. If I can briefly touch on this K.R.L. is the alter ego of Robert Womack, that evidence was before the grand jury as part of that indictment. In fact, Mr. Hall, Mr. Moore was asked on direct examination, did he understand who K.R.L. was? And he stated, I believe K.R.L. and Robert Womack are one and the same. This idea that the investigation was going towards K.R.L. and not Robert Womack is nothing but a red herring. The prosecution was squarely focused on Robert Womack. They believe that Robert Womack and K.R.L. are one and the same. In the Fourth Circuit, in a case called Atkins v. Lanning, Timothy Atkins was arrested improperly on a warrant which was issued for a Timothy Atkins. There was a difference in spelling. It was close, but not quite. Mr. Atkins spent 30 days in jail before the district attorney realized what he had done. That Fourth Circuit said when the district attorney and the investigating officers were acting in the furtherance of a prosecution against Timothy Atkins, not Timothy Atkins, that they were entitled to absolute prosecutorial immunity. The fact is, these officers, the district attorneys, were acting to further the prosecution of Robert Womack. The fact that K.R.L. is now making a separate claim is really a non-issue in this case, because Robert Womack was the target of the investigation, and he always was. Your Honors, in conclusion, this Court should overturn the lower court and find that Mr. Hall and Mr. Reby are both entitled to absolute immunity, because those acts involved with the issuance of the search warrant are unquestionably a part of the prosecutor's role as an advocate of the court. Mr. Hall was working under the direction of the district attorney in furtherance of a prosecution. Thank you, Your Honors. All right. Thank you. We thank both sides. This case is submitted for decision.
judges: Goodwin, Tashima, Wardlaw